# Bullitt, Appellant, *v.* Hinchman.

*Equity—Injunction—Laches—Building restriction—Covenant—Deed.*
Where an owner of land permits fourteen houses to be erected and completed upon adjoining land in violation of a building restriction in his own deed, and rests upon his rights for a period of one year after he has knowledge of the violation of the restriction, he is not entitled to a mandatory injunction to compel the demolition of the houses.

Argued Jan. 12, 1910. Appeal, No. 307, Jan. T., 1909, by plaintiffs, from decree of C. P. No. 3, Phila. Co., March T., 1908, No. 3,823, dismissing bill in equity in case of William C. Bullitt et al., surviving and substituted trustees under the will of John C. Bullitt, deceased, v. Charles S. Hinchman. Before FELL, C. J., BROWN, MESTREZAT, POTTER, ELKIN, STEWART and MOSCHZISKER, JJ. Affirmed.

Bill in equity for an injunction.

FERGUSON, J., filed the following opinion:
This is a bill in equity to which an answer has been filed and the case was heard on bill and answer. In point of fact, the record shows a demurrer to the answer which may be treated as surplusage. The submission of the case on bill and answer is an admission by defendant of the truth of the facts alleged in the bill which are not denied in the answer, and an admission by complainants of the truth of all relevant facts alleged in the answer and wherein there are contradictions between the bill and answer, those alleged in the answer are conceded to be true.

The facts, therefore, may be briefly stated as follows: The Walnut Street Land Company on December 14, 1860, by deed conveyed to Charles F. Leisen a lot of ground on the south side of Chestnut street fifty-two feet ten inches west of Fifty-fifth street, containing in front on Chestnut street forty-one feet one inch, and in depth southwardly at right angles to Chestnut street, two hundred twenty feet two

inches; that said deed contained a restriction or condition to the effect that the owner should not erect on said premises any dwelling houses of a less width in front than seventeen feet; that said premises, by divers mesne conveyances, vested in John C. Bullitt, and the complainants are the trustees under his will. The Walnut Street Land Company, on November 9, 1860, conveyed to Charles Dagit in fee a lot of ground on the south side of Chestnut street and the west side of Fifty-fifth street, containing in front on Fifty-fifth street, 220 feet, and in depth westward between parallel lines fifty-two feet two inches. This lot of ground immediately adjoins the lot of ground above referred to and conveyed to Leisen. The last-named conveyance contained a similar covenant and restriction with regard to the frontage of dwelling houses to be erected on said lot. On April 30, 1907, the complainants discovered that fourteen houses were in course of erection on the last named lot of ground, and were nearing completion; whereupon they communicated with the then registered owner, John T. Gregory, and as a result of negotiations which followed, Gregory entered into a contract for the purchase from the complainants of the first mentioned lot of ground. This agreement was entered into on July 9, 1907, and provided for a settlement on October 1 of that year. Gregory conveyed the premises to D. F. McConnell on July 1, 1907, and on the thirteenth day of the same month, McConnell conveyed the premises to Charles S. Hinchman, the defendant. Gregory failed to complete the purchase of complainants' lot of ground, and on April 23, 1908, the bill was filed. At that time, the fourteen houses were completed. Hinchman, the defendant, knew nothing of the notice to Gregory or the agreement to purchase the complainants' lot. The bill avers that the restrictions as to frontage were imposed on both properties for their mutual benefit and that they have been violated by the erection of the houses, causing irreparable damage to complainants' land; and prays for an injunction restraining the defendant from permitting the buildings to remain erected upon the said lot of ground in violation of the restriction.

Upon these facts, we are of opinion that the complainants are not entitled to equitable relief. Their laches defeat any right which they might otherwise have had. The complainants were aware of the violation of the restriction in April, 1907. In July of that year, defendant became owner. While it is true he purchased with notice of restriction which was upon record and that necessarily the houses as erected violated that restriction, there was the accompanying fact that they had been erected without concealment and had been in course of erection in violation of the restriction necessarily for a considerable period of time. He had no knowledge of the negotiations had between the complainants and his predecessor in title with reference to the purchase of the complainants' land as a settlement of the controversy as to the restriction if it was such as a settlement, and as such purchaser of the houses he received no complaint with regard to the restriction until the bill was filed on April 23, 1908. The notice to defendant of the violation is not so material to the issue as the notice to the complainants. They permitted fourteen houses to be erected and completed in violation of the restriction and rested upon their rights for a period of one year less seven days. They permitted the defendant to become the owner of the premises and to continue as such without complaint or action from July, 1907, to April, 1908, during which time the houses were completed. In High on Injunctions, sec. 1159, the law is stated as follows:

"In considering applications for relief by injunction against the breach of restrictive covenants contained in conveyances of real property, the courts require due diligence upon the part of the plaintiff seeking the relief and laches or acquiescence on his part in the violation of the restricted covenant will ordinarily defeat his application. Indeed, equity requires the utmost diligence in this class of cases upon the part of him who invokes its preventive aid, and a slight degree of acquiescence is sufficient to defeat the application since every relaxation which plaintiff permits in allowing erections to be made in violation of the covenant amounts pro tanto to a disaffirmance of the obligation. Where, there-

fore, plaintiff lies by for a period of four or five months permitting the defendants to go on with their erections in disregard of the covenant he will be denied relief by injunction."

The principle thus stated is conclusive of the questions involved in this case. The complainants have rested too long upon their rights to entitle them to the extraordinary relief of requiring the demolition of fourteen dwelling houses, and if they are damaged they must have recourse to a proceeding at law.

The bill is, therefore, dismissed.

*Error assigned* was decree dismissing the bill.

*Henry S. Drinker, Jr.,* with him *James McMullan* and *Samuel Dickson,* for appellants.—To warrant relief by injunction in the case of a covenant restricting erections upon the premises conveyed, it is not essential that the plaintiff should show any actual damage resulting from the breach of covenant of which he complains, and if a clear breach be shown equity may interpose its preventive aid regardless of the question of damage, since the covenantee is entitled to the benefit of his covenant: Lord Manners v. Johnson, L. R. 1 Ch. Div. 673; Collins v. Castle, L. R. 36 Ch. Div. 243; Steward v. Winters, 4 Sandf. Ch. 587; Com. v. R. R. Co., 24 Pa. 159; St. Andrew's Church's App., 67 Pa. 512.

The complainants are not precluded from the aid of a court of equity by reason of their laches: Hays v. St. Paul M. E. Church, 196 Ill. 633 (66 N. E. Repr. 1040); Knight v. Simmonds, L. R. 1896, 2 Ch. 294; Payson v. Burnham, 141 Mass. 547 (6 N. E. Repr. 708); Jackson v. Stevenson, 156 Mass. 496 (31 N. E. Repr. 691).

There has been no such change in the character of the neighborhood as to make it inequitable to allow complainants the relief prayed for in the bill: Sayers v. Collyer, L. R. 28 Ch. Div. 103; Duke of Bedford v. British Museum, 2 M. & K. 552; Orne v. Fridenberg, 143 Pa. 487; Muzzarelli v. Hulshizer, 163 Pa. 643; Landell v. Hamilton, 175 Pa. 327.

*John G. Johnson,* with him *James Wilson Bayard,* for appellee.—Upon the facts shown by the pleadings complainants' laches is such as to debar them from equitable relief: Orne v. Fridenberg, 143 Pa. 487; Carroll v. Asbury, 28 Pa. Superior Ct. 354; Payson v. Burnham, 141 Mass. 547 (6 N. E. Repr. 708); Jackson v. Stevenson, 156 Mass. 496 (31 N. E. Repr. 691); Linzee v. Mixer, 101 Mass. 512; Chartiers Block Coal Co. v. Mellon, 152 Pa. 286; Keeling v. Ry. Co., 205 Pa. 31.

PER CURIAM, February 14, 1910:

The decree is affirmed on the opinion of the learned judge of the common pleas.

---

# Batchelder *v.* Standard Plunger Elevator Company, Appellant.

*Master and servant—Wrongful discharge—Disobedience—Intoxication.*

1. Whether a master has waived a breach of contract by his servant by retaining him in service after knowledge of such breach is a question of fact. Prima facie such retention is a waiver and condonation is presumed; but if there are circumstances shown that tend to establish a reasonable and proper reason for the delay in discharging it is for the jury to say whether in fact the breach was condoned.

2. Where an employee is guilty of acts of disobedience and of being somewhat under the influence of liquor, but the employer continues him in his employment for a year and a half after the last disobedience of orders and for nearly two years from the time of the alleged intoxication, the employer will be presumed to have condoned the offenses and cannot allege them as grounds for the discharge of the employee.

3. Where an employee uses some of his own time and the time of his employer's other workmen in helping for a brief time another contractor engaged in working on the same building as the employer and his men, and it appears that the employer made no objection to such act of the employee until over a month later, a finding by a referee that such delay was a waiver of the right to discharge the employee, will not be reversed, where there is sufficient evidence to sustain the finding and there is no manifest error.